UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Free Spirit Publishing Inc.,                                  Case No. 21-cv-0938 (WMW/HB)

                              Plaintiff,

                                                              **ORDER DENYING DEFENDANTS'**
          v.                                                       **MOTION TO DISMISS**

David Dworsky and Kanilen Dworsky,

                              Defendants.

---

Before the Court is Defendants David Dworsky and Kanilen Dworsky's motion to dismiss Plaintiff Free Spirit Publishing Inc.'s (Free Spirit) amended complaint. (Dkt. 53.) For the reasons addressed below, the Court denies the Dworskys' motion to dismiss.

## BACKGROUND

Free Spirit is a Minnesota corporation headquartered in Golden Valley, Minnesota, and the Dworskys are citizens of California. In May 2008, Free Spirit entered into an agreement with Deborah Jiang-Stein to acquire the business assets of Attitude Matters, Inc. (Attitude Matters), including the "In A Jar" business and the goodwill of Attitude Matters (collectively, Acquired Assets), all of which Jiang-Stein owned. In their May 2008 agreement, Free Spirit and Jiang-Stein allegedly agreed to execute a subsequent definitive agreement "generally on the terms and conditions" contained in their May 2008 agreement, and Free Spirit agreed to pay Jiang-Stein an "aggregate purchase price" of $300,000 for the Acquired Assets. Free Spirit alleges that the purchase price was to be paid through an initial $50,000 payment within three months of the definitive agreement's execution, with

the remaining balance ($250,000) to be paid over three to four years as a 25 percent royalty on sales of In A Jar products. In October 2008, Free Spirit, Jiang-Stein and Attitude Matters entered into an asset purchase agreement (Purchase Agreement) by which Free Spirit obtained the Acquired Assets and agreed to pay $50,000 in nine payments between May 29, 2008, and the date of closing. Free Spirit alleges that it agreed to pay the remaining $250,000 in the form of "certain contingent royalties," per the terms of separate royalty agreements. The effective date of the Purchase Agreement was June 1, 2008, and the Purchase Agreement did not state a total purchase price of $300,000. Free Spirit alleges that Free Spirit, Jiang-Stein and Attitude Matters always understood the purchase price to be $300,000 and that the parties to the Purchase Agreement believe that the omission of the $300,000 purchase price from the Purchase Agreement was an unintentional error.

In October 2008, Free Spirit, Jiang-Stein and Attitude Matters also entered into two royalty agreements. Under the First Royalty Agreement, with an effective date of June 1, 2008, Free Spirit allegedly agreed to pay a royalty to Jiang-Stein "with respect to the works of authorship in existence on [June 1, 2008]" and provided a royalty rate of 19 percent of net receipts from the sales of such existing products. The First Royalty Agreement also allegedly provided that if Jiang-Stein either received an overpayment or was indebted to Free Spirit, Free Spirit could deduct such amount from any sum due under the First Royalty Agreement or other agreements between the parties. Under the Second Royalty Agreement, with an effective date of October 8, 2008, Free Spirit agreed that, in the event that Free Spirit published new In A Jar products, Free Spirit would pay Jiang-Stein a 3 percent royalty on net sales of those products.

In October 2008, Attitude Matters filed a notice of dissolution with the Minnesota Secretary of State and ceased to exist.  As of October 8, 2008, Free Spirit had paid Jiang-Stein the initial $50,000 payment.  In November 2008, Free Spirit paid Jiang-Stein $2,479.58 in royalties due under the First and Second Royalty Agreements.

In late 2008, the Dworskys sued Jiang-Stein and Attitude Matters in Hennepin County District Court (State Court) to obtain payment of the then-outstanding debts that Jiang-Stein owed the Dworskys.  Free Spirit learned of the litigation in State Court in early December 2008 when Free Spirit received a subpoena from counsel for the Dworskys requesting that Free Spirit produce certain documents.  On February 13, 2009, counsel for the Dworskys directed Free Spirit not to make the next royalty payment owed to Jiang-Stein prior to the due date.  On February 23 and 24, 2009, counsel for the Dworskys notified Free Spirit that the State Court had enjoined Jiang-Stein from accepting future royalty payments from Free Spirit and had ordered Jiang-Stein to instruct Free Spirit to make all payments due to Jiang-Stein to the Hennepin County Administrator pending further State Court orders.  Free Spirit thereafter made payments to the Hennepin County Administrator totaling $23,187.69.

In May 2009, Jiang-Stein filed for Chapter 7 bankruptcy in federal court (Bankruptcy Court).  The Dworskys initiated an adversary proceeding in the Bankruptcy Court against Jiang-Stein, alleging that Jiang-Stein had fraudulently converted $369,078.90 in loans that the Dworskys had extended to Attitude Matters.  The Dworskys and Jiang-Stein thereafter reached a settlement agreement or stipulation in the State Court case, and on December 30, 2009, the State Court entered an order (December Order) in

favor of the Dworskys and against Attitude Matters in the amount of $390,135.88. The December Order directed that all funds that Free Spirit had paid to the Hennepin County Administrator were to be delivered to counsel for the Dworksys and that all future royalty payments pursuant to the First Royalty Agreement were to be paid directly to the Dworskys. The December Order did not address the Second Royalty Agreement.

In January 2010, counsel for the Dworskys notified Free Spirit that the Dworskys and Jiang-Stein had entered into a settlement in the Bankruptcy Court proceeding and that, pursuant to that settlement agreement (to which Free Spirit was not a party) and the December Order, Free Spirit was required to pay the Dworskys all royalty payments that Free Spirit owed Jiang-Stein under the First Royalty Agreement. Although the December Order did not address the Second Royalty Agreement, counsel for the Dworskys advised Free Spirit that the 3 percent royalty payments for new products (*i.e.*, royalty payments under the Second Royalty Agreement) also must be paid to the Dworskys. Free Spirit alleges that, through the settlement agreements between Jiang-Stein and the Dworskys, the Dworskys effectively assumed Jiang-Stein's right and duties under Jiang-Stein's agreements with Free Spirit for the acquisition of the Acquired Assets.

Over the next ten years, Free Spirit paid the Dworksys $367,801.04 in royalty payments. Included in this sum were royalty payments for 27 In A Jar products (Changed Products), which Free Spirit alleges it substantially changed such that they are new products. Free Spirit alleges that, as a result of the changes, the Changed Products should have been subject to the 3 percent royalty under the Second Royalty Agreement rather than a 19 percent royalty for "existing products" under the First Royalty Agreement. Free Spirit

contends that it accidentally misclassified the Changed Products and made royalty payments at the 19 percent rate from October 2010 until January 2021, when Free Spirit discovered its error. Free Spirit alleges that during this almost 11-year period, Free Spirit overpaid the Dworskys a total amount of $143,468.31. Free Spirit notified the Dworskys of the error in March 2021, requested return of the overpayments and explained that, pursuant to the terms of the First and Second Royalty Agreements, Free Spirit would not make further royalty payments pending resolution of the matter. The Dworskys replied by letter, refusing to return the overpayments, refusing to accept the 3 percent royalty rate, claiming that the agreed purchase price for the Acquired Assets was not $300,000, and claiming that Free Spirit was part of the December Order.

Free Spirit commenced this lawsuit against the Dworskys on April 6, 2021, alleging breach of contract (Count I), unjust enrichment (Count II), conversion (Count III), declaratory judgment (VI), and reformation (Count V). The Dworskys now move to dismiss Free Spirit's amended complaint.

## ANALYSIS

The Dworskys seek dismissal of all of Free Spirit's claims, arguing that Free Spirit fails to state a claim on which relief can be granted. If a complaint fails to state a claim on which relief can be granted, dismissal is warranted. *See* Fed. R. Civ. P. 12(b)(6). When determining whether a complaint states a facially plausible claim, a district court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Factual allegations must be sufficient to "raise a right to relief above the speculative level"

and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Legal conclusions couched as factual allegations may be disregarded. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, a district court may consider the complaint, exhibits attached to the complaint, and documents that are necessarily embraced by the complaint, without converting the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). The Court addresses each of Free Spirit's claims in turn.

## I. Breach of Contract (Count I)

The parties disagree as to whether Free Spirit has adequately alleged a breach-of-contract claim. The Dworskys also argue that, even if adequately alleged, Free Spirit's breach-of-contract claim is barred by the statute of limitations.

"Under Minnesota law, a breach-of-contract claim has four elements: (1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." *Nelson v. Am. Fam. Mut. Ins. Co.*, 899 F.3d 475, 480 (8th Cir. 2018). Minnesota law provides a six-year statute of limitations for breach-of-contract claims. Minn. Stat. § 541.05, subdiv. 1(1). "A cause of action for breach of contract accrues—and the statute of limitations begins to run—'at the time of the alleged breach.' " *OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Rsch.*, 132 F. Supp. 3d 1119, 1126 (D. Minn. 2015) (quoting *Jacobson v. Bd. of Trs. of the Tchrs. Ret. Ass'n*, 627 N.W.2d 106, 110 (Minn. Ct. App. 2001)).

The Dworksys contend that Free Spirit's breach-of-contract claim is barred by the statute of limitations. Free Spirit alleges that the Dworskys breached the contract in

March 2021 by refusing to return Free Spirit's overpayments, which the Dworskys were allegedly obligated to return pursuant to the 2008 agreements between Free Spirit, Jiang-Stein and Attitude Matters in which the Dworskys became successors-in-interest as a result of their settlement with Jiang-Stein. Because the alleged breach occurred in March 2021, a date well within the statute of limitations, Free Spirit's breach-of-contract claim is not barred by the statute of limitations.

The Dworskys also argue that Free Spirit's breach-of-contract claim fails because the Purchase Agreement did not specify a $300,000 total purchase price. Free Spirit alleges that the omission of the $300,000 purchase price from the Purchase Agreement was an unintentional error and describes other agreements suggesting that the parties had intended there to be a definite purchase price of $300,000. Although a letter of intent "merely create[s] an agreement to negotiate in good faith" and is "not the complete and final agreement," *Lindgren v. Clearwater Nat'l Corp.*, 517 N.W.2d 574, 574 (Minn. 1994), as discussed in Part V of this Order, a court may reform a contract when the contract "failed to express [the parties'] true intention" and the parties omitted a term "due to mutual mistake" of the parties, *Theisen's, Inc. v. Red Owl Stores, Inc.*, 243 N.W.2d 145, 148 (Minn. 1976). A "mutual mistake" occurs when "parties enter into a contract while mutually mistaken concerning a basic assumption of fact on which the contract was made, and the mistake has a material effect on the agreed exchange." *Dubbe v. Lano Equip., Inc.*, 362 N.W.2d 353, 356 (Minn. Ct. App. 1985). Here, Free Spirit alleges a mutual mistake occurred wherein the parties unintentionally omitted the purchase price from their Purchase Agreement. Free Spirit seeks reformation on that basis, as addressed above and in Part V

of this Order.  Free Spirit has described other agreements between Free Spirit, Jiang-Stein and Attitude Matters that suggest that the parties had intended there to be a definite purchase price of $300,000 and has alleged that Free Spirit, Jiang-Stein and Attitude Matters will so attest.  Free Spirit has, therefore, stated a claim that exceeds mere speculation, alleging contemporaneous facts that support Free Spirit's characterization of the material terms of the Purchase Agreement.

For these reasons, the Court concludes that Free Spirit has stated a claim upon which relief may be granted and denies the Dworskys' motion to dismiss Free Spirit's breach-of-contract claim (Count I).

## II.    Unjust Enrichment (Count II)

The Dworskys argue that Free Spirit may not bring an unjust-enrichment claim because the rights of the parties are governed by a contract.  Free Spirit counters that dismissal of its unjust-enrichment claim is unwarranted because the claim may extend beyond terms otherwise governed by the contract.

"A claim for unjust enrichment arises when a party gains a benefit illegally or unlawfully."  *Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Can., Ltd.*, 552 N.W.2d 254, 268 (Minn. Ct. App. 1996).  To state a claim for unjust enrichment under Minnesota law, a plaintiff must allege the following elements: "(1) a benefit conferred; (2) the defendant's appreciation and knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for him to retain it without paying for it."  *Dahl v. R.J. Reynolds Tobacco Co.*, 742 N.W.2d 186, 195 (Minn. Ct. App. 2007).  If the rights of the parties are governed by a

valid contract, an unjust enrichment claim ordinarily is inappropriate. *See U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981).

The Dworskys argue that Free Spirit's unjust-enrichment claim should be dismissed because the existence of an express contract precludes recovery under a theory of unjust enrichment. The Federal Rules of Civil Procedure, however, expressly permit a party to plead alternative or inconsistent claims or defenses. Fed. R. Civ. P. 8(d)(2)–(3). For this reason, courts routinely decline to dismiss an unjust-enrichment claim when, as here, it is pled in the alternative. *See, e.g., United States v. R.J. Zavoral & Sons, Inc.*, 894 F. Supp. 2d 1118, 1127 (D. Minn. 2012) (concluding that plaintiff "may maintain this [unjust-enrichment] claim as [an] alternative claim for relief under Rule 8 of the Federal Rules of Civil Procedure"); *Cummins Law Office, P.A. v. Norman Graphic Printing Co.*, 826 F. Supp. 2d 1127, 1130 (D. Minn. 2011) (observing that courts "routinely permit the assertion of contract and quasi-contract claims together" and declining to dismiss plaintiff's unjust-enrichment claim on that basis). Free Spirit may, therefore, plead unjust enrichment in the alternative. And because Free Spirit may plead unjust enrichment in the alternative, the Court need not address Free Spirit's argument that its unjust-enrichment claim may extend beyond terms governed by the contract.

For these reasons, the Court denies the Dworskys' motion to dismiss Free Spirit's unjust-enrichment claim (Count II).

## III.    Conversion (Count III)

The parties disagree as to whether Free Spirit has stated a claim of conversion based on the Dworskys' retention of the sums Free Spirit allegedly overpaid the Dworskys.

Under Minnesota law, conversion occurs when a person "willfully interferes with the personal property of another without lawful justification, depriving the lawful possessor of use and possession." *Williamson v. Prasciunas*, 661 N.W.2d 645, 649 (Minn. Ct. App. 2003) (internal quotation marks omitted). "The elements of common law conversion are: (1) plaintiff holds a property interest; and (2) defendant deprives plaintiff of that interest." *Id.* A defendant's "act must be one which [the defendant] knows to be destructive of any outstanding possessory right." *Christensen v. Milbank Ins. Co.*, 658 N.W.2d 580, 586 (Minn. 2003). But "[g]ood faith is not a defense to a claim of conversion." *Dairy Farm Leasing Co. v. Haas Livestock Selling Agency, Inc.*, 458 N.W.2d 417, 419 (Minn. Ct. App. 1990).

The Dworskys argue that Free Spirit fails to allege a conversion claim because the Purchase Agreement did not include a $300,000 purchase price, and for this reason the royalty payments belong to the Dworskys and the Dworskys are not obligated to refund Free Spirit for any alleged overpayments. As discussed in Parts I and V of this Order, Free Spirit alleges that the omission of the $300,000 purchase price from the Purchase Agreement was a mutual mistake for which this Court should grant reformation. Free Spirit also alleges that it holds a property interest in the money that Free Spirit overpaid on its royalty payments to the Dworskys. Free Spirit's allegations, therefore, establish the first element of conversion, which requires a plaintiff to hold a property interest. Free Spirit further alleges that the Dworskys deprived Free Spirit of its property in March 2021 when the Dworskys refused to return the money Free Spirit overpaid the Dworksys on the royalty payments. Free Spirit thus presents facts sufficient to satisfy the second element of

conversion, which requires Free Spirit to establish that the Dworskys deprived Free Spirit of its property interest in the amount Free Spirit overpaid on the royalty payments. Free Spirit's allegations, taken as true, suggest that, in refusing to return the overpayments, the Dworskys knew that their actions would be destructive of Free Spirit's possessory right in the amount Free Spirit overpaid. Free Spirit has, therefore, also alleged facts sufficient to suggest that the Dworskys had the requisite intent for a conversion claim. Construing the facts in the light most favorable to the non-moving party, as is required on a motion to dismiss, the Court finds that Free Spirit alleges sufficient facts to support a claim of conversion upon which relief can be granted.

For this reason, the Court denies the Dworskys' motion to dismiss Free Spirit's conversion claim (Count V).

### IV.   Declaratory Judgment (Count VI)

The parties dispute whether Free Spirit may seek a declaratory judgment against the Dworskys. Minnesota's Uniform Declaratory Judgments Act grants courts the power "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Minn. Stat. § 555.01. Parties to a written contract "may have determined any question of construction or validity" arising under the contract. Minn. Stat. § 555.02 (2006). "But [a] court has no jurisdiction over a declaratory judgment proceeding unless there is a justiciable controversy." *Onvoy, Inc. v. ALLETE, Inc.*, 736 N.W.2d 611, 617 (Minn. 2007). Because the Court denies the Dworskys' motion to dismiss Free Spirit's other claims, there is a justiciable controversy and the Court could award declaratory relief.

The Court, therefore, denies the Dworskys' motion to dismiss Free Spirit's declaratory-judgment claim (Count IV).

## V.   Reformation (Count V)

The parties also dispute whether Free Spirit is entitled to reformation of the Purchase Agreement to include the mistakenly omitted $300,000 purchase price.  The Dworskys argue that Minnesota law disallows reformation to the prejudice of third parties such as the Dworskys.

Reformation is the "alteration or amendment of the [contract] language to reflect the true intent of the parties at the time of its inception." *Jablonski v. Mut. Serv. Cas. Ins. Co.*, 408 N.W.2d 854, 857 (Minn. 1987).  Minnesota law governing reformation of a written instrument is clear and well-established:

> A written instrument can be reformed by a court if the following elements are proved: (1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party. These facts must be established by evidence which is clear and consistent, unequivocal and convincing.

*Nichols v. Shelard Nat'l Bank*, 294 N.W.2d 730, 734 (Minn. 1980) (internal citations omitted).

Free Spirit alleges that there was a mutual mistake whereby the $300,000 purchase price was omitted from the Purchase Agreement and seeks reformation of the contract to include this price.  Free Spirit alleges that all of the parties to the original contract will attest that the agreed-upon purchase price was $300,000 and that the purchase price's

omission from the Purchase Agreement was inadvertent and a mistake. These facts, if proved, could establish all of the elements of reformation.

The Dworskys argue that, under Minnesota law, a court may not grant reformation of a written agreement if reformation would prejudice third parties. But the legal authorities that the Dworskys rely on for this proposition are distinguishable from this dispute. Here, the alleged omission in the agreement is one of mutual mistake (rather than unilateral mistake paired with fraud) *and* the requested reformation does not involve changing the rights of a party specifically contemplated by and addressed in the agreement. *See Manderfeld v. Krovitz*, 539 N.W.2d 802, 805 (Minn. Ct. App. 1995) (holding that the district court could not reform a contract to bind a third party who did not consent to being a party to the contract because "[i]t has long been the law that a person may not be compelled to enter into a contract with one whom she never intended to deal with"); *Heim v. Lee*, 654 N.W.2d 161, 165 (Minn. Ct. App. 2002) (precluding reformation of a contract to disadvantage an injured employee, who was a third party specifically contemplated by the parties to the contract and provided for in the contract); *see also Proulx v. Hirsch Bros. Inc.*, 155 N.W.2d 907, 912 (Minn. 1968) (denying reformation based on fraud because there "was substantial uncontradicted testimony that [defendant] fully intended to perform his duty" under the contract "and made numerous and continued efforts to do so" and because "[o]ne who may avoid a contract for fraud ratifies it by accepting and retaining the benefits thereof"). As such, these cases are inapposite.

Because Free Spirit has alleged sufficient facts to support a claim for reformation, the Court denies the Dworskys' motion to dismiss Free Spirit's reformation claim (Count V).

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants David Dworsky and Kanilen Dworsky's motion to dismiss Plaintiff Free Spirit Publishing Inc.'s amended complaint, (Dkt. 53), is **DENIED**.

Dated:  April 18, 2022                         s/Wilhelmina M. Wright____
                                               Wilhelmina M. Wright
                                               United States District Judge